IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff<br><br>vs.<br><br>ONE PARCEL OF REAL PROPERTY WITH BUILDINGS, APPURTENANCES AND IMPROVEMENTS KNOWN AS 38 KNOTTY PINE ROAD, LOCATED IN THE TOWN OF TIVERTON, RHODE ISLAND; ONE 2005 CADILLAC DEVILLE, VIN: 1G6KE57Y55U229750; ONE 2001 CHEVROLET CORVETTE, VIN: 1G1YY32G115122127; ONE LOT OF SIXTY THOUSAND DOLLARS ($60,000) IN U.S. CURRENCY; AND ONE LOT OF THREE THOUSAND FOUR HUNDRED SIXTY DOLLARS ($3,460) IN U.S. CURRENCY,<br>Defendants | C.A. No. 06-073ML |

PLAINTIFF'S OBJECTION
TO CLAIMANT ALBERT SOUSA'S MOTION TO SUPPRESS

Now comes the plaintiff, the United States of America, by and through its attorneys, and objects to the Claimant, Albert Sousa's, Motion to Suppress for the reasons set forth in the accompanying memorandum of law.

Respectfully submitted,

UNITED STATES OF AMERICA

By its attorneys,

ROBERT CLARK CORRENTE
United States Attorney

/s/ Michael P. Iannotti
MICHAEL P. IANNOTTI, #2919
Assistant U.S. Attorney

U.S. Attorney's Office
Fleet Center
50 Kennedy Plaza, 8th floor
Providence, RI 02903
401/709-5000
401/709-5017 (fax)
michael.iannotti@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on December 22, 2006, I electronically filed the within Plaintiff's Objection to Claimant Albert Sousa's Motion to Suppress and supporting memorandum with the Clerk of the United States District Court for the District of Rhode Island using the CM/ECF System.

The following participant has received notice electronically:

C. Leonard O'Brien, Esq.
MacFadyen, Gescheidt & O'Brien
101 Dyer Street
Providence, RI 02903

/s/ Michael P. Iannotti
MICHAEL P. IANNOTTI
Assistant U.S. Attorney

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff<br><br>vs.<br><br>ONE PARCEL OF REAL PROPERTY WITH BUILDINGS, APPURTENANCES AND IMPROVEMENTS KNOWN AS 38 KNOTTY PINE ROAD, LOCATED IN THE TOWN OF TIVERTON, RHODE ISLAND; ONE 2005 CADILLAC DEVILLE, VIN: 1G6KE57Y55U229750; ONE 2001 CHEVROLET CORVETTE, VIN: 1G1YY32G115122127; ONE LOT OF SIXTY THOUSAND DOLLARS ($60,000) IN U.S. CURRENCY; AND ONE LOT OF THREE THOUSAND FOUR HUNDRED SIXTY DOLLARS ($3,460) IN U.S. CURRENCY,<br>Defendants | ) | C.A. No. 06-073ML |

MEMORANDUM IN SUPPORT OF PLAINTIFF’S OBJECTION
TO CLAIMANT ALBERT SOUSA’S MOTION TO SUPPRESS

STATEMENT OF FACTS

On August 31, 2005, at approximately 11:00 a.m., the claimant, Albert Sousa, was stopped for speeding by Tiverton police while operating a 2005 Cadillac Deville and traveling south on Fish Road in Tiverton. When Sousa was stopped by Tiverton Police Officer Kenneth Cabral, he was 1.3 miles from his residence at 38 Knotty Pine Road. While speaking to Sousa, Cabral detected the strong odor of marijuana and asked Sousa if he had marijuana in the vehicle. When Sousa replied that he had “just smoked a half joint”, he was asked to exit the vehicle. Cabral then conducted a cursory search of the passenger

compartment and was unable to locate the “joint”. Cabral noticed that the smell was coming from the rear seat and when he lowered the rear armrest he saw a black plastic trash bag and the odor became stronger. Cabral then opened the trunk and discovered five large black trash bags which contained 114 pounds of marijuana (compressed marijuana bricks). Also, a black briefcase was found on the front passenger seat. Sousa was arrested and brought back to the police station.

During an inventory search of the briefcase, officers discovered 5 Oxycodone pills labeled “501", what appeared to be drug ledgers, the sketch of a boat, a blue Fleet Bank Deposit Bag containing $3,460 in U.S. currency, mortgage information relative to 38 Knotty Pine Road, and a card from the Tiverton Fire Department requesting Sousa to place a number on his house at 38 Knotty Pine Road. After being advised of his “Miranda” rights, Sousa refused to divulge the source of the marijuana and despite the fact that he was traveling south on Fish Road, indicated that he was going to Providence. Sousa also consented to a search of his residence in Fall River, Massachusetts and denied owning any property in Tiverton, Rhode Island. Tiverton Police Detective Michael Miguel then went to the Tax Assessor’s Office at Tiverton Town Hall where, after checking the records relative to 38 Knotty Pine Road, he discovered that the property had been purchased by Sousa in 1993 and that he is still the owner.

Miguel then went to 38 Knotty Pine Road and observed that the house was a two-story residence with all of the windows either tinted or blacked-out. A 2002 26 foot white Chaparral boat, registered to Sousa in Rhode Island, and a 2002 blue GMC truck, registered to Sousa in Massachusetts, were in the driveway. Miguel contacted Fall River, Massachusetts K-9 officer Scott Paul who had previously been assigned to the Drug Enforcement Administration (DEA). Paul indicated that while he was assigned to DEA, he had received information from a reliable confidential source that Sousa was a known narcotics dealer. Officers then monitored [conducted surveillance] the residence while a search warrant was obtained.

Prior to the execution of the Rhode Island search warrant, Miguel told Sousa that he had a warrant to search the house and asked Sousa whether there were any hidden dangers in the house. Sousa responded in the negative and provided a key and alarm code to Miguel. At approximately 9:45 p.m., the warrant was executed at 38 Knotty Pine Road. Paul and his K9 “Ziggy” conducted an initial search of the property and informed Miguel that Ziggy had detected the presence of drugs in a first floor closet under the staircase, in a red corvette parked in the first floor garage, in a hole located under the whirlpool tub on the second floor, and in the shed located on the east side of the property.

Officers then conducted a search of the residence. DEA

Special Agent David Toracinta and DEA Task Force Agent Steven Calenda discovered a plastic bag containing approximately 5.5 ounces of marijuana and a paper bag containing several bottles of pills in the closet. It was later determined that the bottles contained generic oxycodone pills (5 mg), generic oxycodone pills (10mg), generic oxycodone capsules (5 mg), and oxycodone HCI capsules (5 mg). All of these are a schedule II controlled substance. Also discovered in the closet was a blue canvas bag containing a scale, several plastic baggies, razor knives, plastic trash bags, and a wooden cabinet which contained an air filtration device. These items are utilized in the processing and packaging of marijuana. Cabral also found three large black trash bags in a crawl space above the back of the garage which contained handguns, a rifle, a pistol grip shotgun, numerous rounds of ammunition, holsters, and gun cleaning supplies. Miguel discovered a plastic bag containing a box with two bottles of generic Oxycodone pills (10mg), a schedule II controlled substance, on the floor in the east side of the garage. In the trunk of a 2001 red Corvette registered to Sousa (MA registration 592ZHK) and parked in the west side of the garage, Calenda found a yellow envelope which contained six brown paper bags. Each bag contained $10,000 in US currency, for a total of $60,000. In the rear of the garage, officers also found two digital scales, a large quantity of black plastic garbage bags consistent with

those containing the marijuana found in the Cadillac, brown paper lunch bags consistent with those containing the money found in the Corvette, a large quantity of plastic zip lock bags, different types of plastic bags, and a large quantity of elastic bands.

## ARGUMENT

### I. THE AFFIDAVIT IN SUPPORT OF THE SEARCH WARRANT FOR THE DEFENDANT REAL PROPERTY ESTABLISHED PROBABLE CAUSE FOR THE SEARCH EVEN IF ITEMS DEEMED EXCLUDEABLE BY THE CLAIMANT ARE DISREGARDED

Sousa seeks a hearing under Franks v. Delaware, 438 U.S. 154, 155-56 (1978), to suppress the evidence seized as a result of the execution of the search warrant at the defendant real property at 38 Knotty Pine Road.

An affidavit in support of a search warrant is presumed valid. Franks v. Delaware at 171. A defendant is not entitled to a “Franks hearing” unless he makes "a substantial preliminary showing" that: (1) "a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit"; and (2) "the allegedly false statement is necessary to the finding of probable cause." Franks v. Delaware at 155-56. Allegations of negligence or of innocent mistake are not sufficient. United States v. Aguirre, 2006 WL 2711661 (D. Puerto Rico September 14, 2006).

A. <u>The affidavit did not contain a false material statement</u>

Sousa claims that the following statement:

> "Your complainant prays that said warrant may be served in the day time and or the nighttime for the reason that 24 hour warrant: informant information and surveillance conducted by your affiant concludes that the target of the investigation utilizes the cover of darkness to conceal his illegal narcotics activity ..."

was false and made in reckless disregard for the truth and that the Judge issuing the warrant relied on this statement. It is important to note that this statement is not contained n the affidavit in support of the warrant, but rather is found in the application for the warrant and was utilized to determine whether a nighttime warrant should be authorized. The misstatement in the application was, in actuality, caused by an error when the officer failed to delete boilerplate language from a previous warrant application used in another case when he prepared the warrant to search 38 Knotty Pine Drive. Such language is commonly utilized as justification for obtaining search warrants at night. This language does not appear at any point in the affidavit as part of the affiant's recitation of probable cause for the issuance of the warrant.

This misstatement was not the result of an intent to deceive the court or a reckless disregard for the truth. It was simply the result of negligence, mistake, or inattention to detail as the affiant "rushed to prepare an affidavit in the midst of a developing investigation." <u>United States v. Capozzi</u>, 347 F.3d

327, 332 (1st Cir. 2003); United States v. Brunette, 256 F.3d 14, 20 (1st Cir. 2001); United States v. Owens, 167 F.3d 739, 743 (1st Cir. 1999). The absence of this information from the affidavit is a clear indication that it was not intended to be used to establish probable cause for the warrant. Rather, it was inadvertently left on the complaint form.[1]

B. The affidavit did not contain information obtained as the result of an illegal search.

The Fourth Amendment to the United States Constitution guarantees "the right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures." U.S. Const. Amend. 4. Until 1967, the Fourth Amendment was viewed as protecting *places*, specifically the dwelling, and the areas surrounding the dwelling known as the "curtilage." In Katz v. United States, 389 U.S. 347 (1967), the focus was shifted from the nature of the *area* that was the subject of the actions of the police officer, to the *individual*, that is, the question became that of whether the area was one in which the individual had exhibited a "reasonable expectation of privacy." Under the holding in Katz, that which an individual "knowingly exposes to the public, even in his own house or

[1] Likewise, the statement that "certain property had been stolen or embezzled or obtained by false pretense, or pretenses, with the intend to cheat or defraud in this state or elsewhere" was mistakenly left on the complaint form, but not contained in the affidavit.

office, is not the subject of Fourth Amendment protection," while that which "he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." Id. at 351. [2]

No reasonable expectation of privacy exists for an object that is within the "plain view" of a police officer who has a right to be in a position to have that view. Harris v. United States, 390 U.S. 234 (1968). Even though an individual may construct a fence around his backyard obstructing a view from the street, it is not unreasonable, for example, for police officers to observe marijuana plants growing in the yard while conducting aerial surveillance within publically navigable airspace. California v. Ciraolo, 476 U.S. 207 (1986).

The tinted windows on the house in the case at bar clearly evidence an attempt by Souza to keep private the items contained *inside* his home. To suggest that Souza manifested a subjective intent to keep the actual windows, one side of which are (by their very nature as windows) on the outside of the house, from public view is ludicrous. A portion of the windows are on the second floor and approximately 20 feet off the ground and visible

[2]In a concurring opinion, Justice Harlan outlined a two-part test for the determination of whether an individual was entitled to Fourth Amendment protection: (1) the individual must have exhibited an actual (subjective) expectation of privacy, and (2) the expectation must be "one that society is prepared to recognize as 'reasonable'". Katz, 389 U.S. at 361. See also Smith v. Maryland, 442 U.S. 735 (1975).

to those passing by the house and to neighbors. For the same reason, it would not be objectively unreasonable for a police officer conducting a surveillance to observe that the windows were tinted.

Souza cites the four factors in United States v. Dunn, 480 U.S. 294, 301 (1987), which are used to determine whether the officer has trespassed onto the curtilage. He argues that the police officer needed to trespass onto the curtilage of Sousa's house in order to determine that the windows were tinted. These factors are as follows: "the proximity of the area claimed to be curtilage to the home, whether the area is included within the enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by." Id. at 301. While the areas visited by the police officers were close to the house and some steps may have been taken by Sousa to enclose the area from observation, there is no evidence that Sousa took any steps to conceal from the public the fact that the windows were tinted. The windows were not obstructed in any manner and could be seen from either the public areas or a neighbor's property. Accordingly, it makes no difference whether the police officers went into the curtilage as there was no subjective or objective

expectation of privacy in the windows.[3]

Likewise, the large boat in the front yard was subject to public observation from the street or driveway. See United States v. Roccio, 981 F. 2d 587, 591 (1st Cir. 1992) where the warrantless seizure of a vehicle parked in the driveway easily visible from the street was upheld; and United States v. Hensel, 699 F.2d 18, 32-33 (1st Cir. 1983) where a license plate number taken from a vehicle visible to passers-by was deemed admissible.

In short, where the person asserting the privacy interest makes no effort to conceal the information he seeks to suppress from public view, he cannot thereafter complain that the information was obtained as the result of an illegal search.

C. The search of the briefcase was permissible both as a search incident to arrest and an inventory search

To protect from danger a police officer who has made a lawful custodial arrest of the occupant of an automobile, the officer may, as a "contemporaneous incident of that arrest", search the passenger compartment of that vehicle and "may also examine the contents of any containers found within the passenger

[3]Sousa also alleges that neighbors observed police officers searching the house prior to the obtaining of the search officers. At the bail hearing in state court, the Judge did not find the neighbors to be credible witnesses. Moreover, it is difficult to conceive of a reason why the officers would commence searching a dwelling for which they were in the process of obtaining a warrant to search. In any event, it is undisputed that no information from this alleged search found its way into the affidavit.

compartment." New York v. Belton, 453 U.S. 454, 460-61 (1981). Clearly Officer Cabral's opening of Sousa's briefcase which was found on in the passenger compartment of the vehicle was a permissible search incident to the arrest of Sousa.

The more extended search of Sousa's briefcase at the police station was also permissible as an inventory search conducted pursuant to a standardized inventory policy. Illinois v. Lafayette, 462 U.S. 640, 647-48 (1983). Such a search is inherently reasonable because it serves the "legitimate governmental interests" of protecting the owner's property while in police custody and protecting the police against the possibility of false claims of theft. Illinois v. Lafayette at 647. Since "[T}he justification for such searches does not rest on probable cause... the absence of a warrant is immaterial to the reasonableness of the search." Illinois v. Lafayette at 643. Also, the "subjective intent of the officers" in conducting the search is irrelevant as long as it is conducted pursuant to a standard inventory policy. United States v. Hawkins, 279 F.3d 83, 86 (1st Cir. 2002).

Sousa does not claim that the search of the briefcase was conducted in the *absence* of a standard inventory policy. Rather, Sousa claims that the police officers failed to exactly follow the written procedures regarding the contemporaneous recording of the result of the inventory as outlined in the Tiverton policy

and that this renders the search invalid. However, as long as there is a standard inventory policy as required by Illinois v. Lafayette, the mere failure to compile the written inventory does not render the inventory search invalid. United States v. Trullo, 790 F.2d 205, 206 (1st Cir. 1986); United States v. O'Bryant, 775 F.2d 1528, 1534 (11th Cir. 1985).

D. Even if items listed above were excluded from the affidavit, there was still probable cause for the search

An affidavit in support of a search warrant must demonstrate probable cause that (1) a particular individual has committed a crime and (2) that specified evidence of the offense will be found at the place for which the search warrant is sought. United States v. Beckett, 321 F.3d 26, 31 (1st Cir. 2003); United States v. Zayas Diaz, 95 F.3d 105, 110-11 (1st Cir. 1996). To determine the sufficiency of the affidavit, the court examines whether the "totality of the circumstances" set forth in the affidavit constitute probable cause to search the premises. United States v. Beckett at 31; United States v. Khounsavanh, 113 F.3d 279, 283 (1st Cir. 1997). The affidavit is examined "in a practical, common-sense fashion" and "considerable deference" is accorded "to reasonable inferences the [issuing judicial officer] may have drawn from the attested facts." United States v. Beckett at 31: United States v. Barnard, 299 F. 3d 90, 93 (1st Cir. 2002)(quoting United States v. Zayas-Diaz, 95 F.3d at 111).

Sousa does not contest the lawfulness of the stop or the search of his vehicle which led to the discovery of the 114 pounds of marijuana in the trunk. Sousa was less than two miles from his house with a trunk full of marijuana. The marijuana was in brick form and Sousa needed to break it up into smaller quantities for sale. Presumably, Sousa was not going to break up and re-package the marijuana in his car. He needed a safe and secure location such as his house, which was in the same direction in which he was headed when he was stopped. Also, information from a confidential source indicated that Sousa was a known narcotics dealer. To prevent the police from finding further evidence and the proceeds of his drug trafficking, Sousa lied about owning property in Tiverton.[4] Considering the "totality of the circumstances", these facts alone, which were contained in the affidavit in support of the warrant, were sufficient to constitute probable cause that the house contained evidence of Sousa's marijuana distribution activities.[5]

---

[4]Even without the evidence obtained from the briefcase, this type of identifying information is readily available through a simple public records search such as the one conducted by the Tiverton police officers.

[5]Sousa also claims that he was illegally questioned after invoking his right to counsel. However, this conversation initiated by the police to determine if there were any safety hazards on the property occurred *after* the warrant was obtained, and, therefore, can have no bearing on the suppression issue.

## II. EVEN IF THE AFFIDAVIT IN SUPPORT OF THE WARRANT APPLICATION LACKS PROBABLE CAUSE, THE "GOOD FAITH EXCEPTION" TO THE EXCLUSIONARY RULE APPLIES

In United States v. Leon, 468 U.S. 897, 923 (1984), the Supreme Court adopted an exception to the exclusionary rule by holding that "evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant" need not be suppressed as the purpose of the exclusionary rule is to deter police misconduct. Thus, exclusion is only appropriate where (1) the affiant includes information that he knows is false or would have known was false except for a reckless disregard for the truth and without the inclusion of that information the affidavit lacks probable cause or (2) where the affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." United States v. Leon at 923; United States v. Capozzi, 347 F.3d at 332; United States v. Brunette, 256 F.3d at 19.

In the case at bar, all of the misstatements in the warrant application are found solely in the boilerplate language of the Rhode Island "Complaint to Search" *form*, not in the affidavit. Presumably, if the officers had intended this information to be part of the probable cause determination by the judge, they would have included it in the affidavit. There was no intent to deceive the judge and there was no reckless disregard for the truth. This was a simple mistake caused by the utilization of a

boilerplate complaint form. "Mere negligence or inattention to detail ... does not deprive the government of the benefits of the Leon exception. United States v.Capozzi at 332. See also, United States v. Brunette at 20; United States v. Owens, 167 F.3d at 745.

Since the officers executing the warrant relied in good faith on its validity, the evidence obtained therefrom should not be excluded.

## CONCLUSION

Since the affidavit in support of the search warrant established probable cause that evidence of the narcotics distribution activities of Albert Sousa would be found at 38 Knotty Pine Road and since, in any event, officers executing the warrant relied in good faith on its validity, the claimant, Albert Souza's, motion to suppress the fruits of the search of 38 Knotty Pine Road should be denied.

Respectfully submitted,

UNITED STATES OF AMERICA

By its attorneys,

ROBERT CLARK CORRENTE
United States Attorney

/s/ Michael P. Iannotti
MICHAEL P. IANNOTTI, #2919
Assistant U.S. Attorney
U.S. Attorney's Office
Fleet Center
50 Kennedy Plaza, 8th floor
Providence, RI 02903
401/709-5000
401/709-5017 (fax)
michael.iannotti@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on December 22, 2006, I electronically filed the within Plaintiff's Objection to Claimant Albert Sousa's Motion to Suppress and supporting memorandum with the Clerk of the United States District Court for the District of Rhode Island using the CM/ECF System.

The following participant has received notice electronically:

C. Leonard O'Brien, Esq.
MacFadyen, Gescheidt & O'Brien
101 Dyer Street
Providence, RI 02903

/s/ Michael P. Iannotti
MICHAEL P. IANNOTTI
Assistant U.S. Attorney