IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff<br><br>vs.<br><br>ONE PARCEL OF REAL PROPERTY WITH BUILDINGS, APPURTENANCES AND IMPROVEMENTS KNOWN AS 38 KNOTTY PINE ROAD, LOCATED IN THE TOWN OF TIVERTON, RHODE ISLAND; ONE 2005 CADILLAC DEVILLE, VIN: 1G6KE57Y55U229750; ONE 2001 CHEVROLET CORVETTE, VIN: 1G1YY32G115122127; ONE LOT OF SIXTY THOUSAND DOLLARS ($60,000) IN U.S. CURRENCY; AND ONE LOT OF THREE THOUSAND FOUR HUNDRED SIXTY DOLLARS ($3,460) IN U.S. CURRENCY,<br><br>Defendants | : | C.A. No. 06-73ML |

**CLAIMANT ALBERT SOUSA'S REPSONSE**
**TO THE GOVERNMENT'S OBJECTION**
**TO CLAIMANT'S MOTION TO SUPPRESS**

Claimant Albert Sousa submits this supplemental memorandum in response to the government's objection to his Motion to Suppress.

## I. The Location of a Sworn False Statement in a Warrant Application Is Not Relevant to a Franks Analysis.

The government concedes that when Detective Miguel applied for the search warrant in this case he presented the magistrate with false information. The government, however, finds noteworthy that the misstatement occurred in the "Application" or the "Complaint to Search" section of the warrant and not the narrative section entitled "Affidavit." The government does not cite a single case in support of the distinction it raises. The government misapprehends the reasoning of *Franks v. Delaware*, 438 U.S. 154 (1978) and the line of cases that follow from its

holding when it presents this as distinction worthy of note. The government takes a too technical reading of *Franks*. The distinction between the particular location of a sworn false statement within a warrant application is not significant.

A. Affidavit

*Franks v. Delaware* held that the Fourth Amendment, the Fourteenth Amendment, and the derivative exclusionary rule allowed a defendant to attack the veracity of a sworn statement used by police to procure a search warrant after the warrant had been issued and executed. Id. Additionally, Blacks Law Dictionary defines "affidavit" as "[a] written … statement of facts … confirmed by oath … taken before a person having authority to administer such oath … ." Blacks Law Dictionary, Sixth Ed. (1990). A false statement which is presented to a magistrate when seeking a search warrant demands judicial scrutiny regardless of in which section the false statement appears. Further, the terms "application" and "affidavit" have been used interchangeably when conducting a *Franks* analysis. The First Circuit has used language that makes clear that *Franks* requires judicial scrutiny of the officers' false statements contained within the application as a whole. The Court has held, "[b]oth Franks and our own related precedent suggest that suppression should be ordered only if the warrant *application*, cleansed of any false information … no longer demonstrates probable cause. *United States v. Stewart*, 337 F.3d 103 (1st Cir. 2003)(emphasis added).

It makes sense that false material statements in the warrant application, as opposed to the narrative affidavit, are equally scrutinized. It would be illogical to allow law enforcement officers to present false material statements in some parts of the warrant application with impunity but require exclusion of seized evidence when a false material statement is included in

the narrative "affidavit." The *entire* application is presented to the magistrate. The focus of the court is to decide whether the false material statement contributed to a finding of probable cause.

The false material statement in this case was in fact, a sworn statement. It was contained within a section that begins "a) Detective Michael Miguel of the Tiverton Police Department … ON OATH COMPLAINS THAT." Also, just below the false statement the text reads "subscribed and sworn to before me" and signatures of the affiant and magistrate immediately follow. It is apparent from the face of the document entitled "Complaint to Search and Seize Property/or Person" that the facts alleged within it are sworn to, under oath, just as they are in the supporting narrative affidavit.

The court must excise the false statement and then assess under a totality of the circumstances test whether probable cause remained to justify a search of the residence. If the misinformation was necessary to support the magistrate judge's finding of probable cause then the warrant is invalid and the seized evidence must be excluded. *United States v. Strother,* 318 F.3d 64 (1st Cir. 2003)

**II. The False Statement Evidences a Reckless Disregard for the Truth and Not An Innocent Mistake.**

The government is correct that negligent or innocent mistake are insufficient to mandate an evidentiary hearing and only evidence of a deliberately false statement or one made with a reckless disregard for the truth do require such a hearing and the opportunity to cross examination the affiant officer. However, what occurred in this case cannot be excused as an innocent mistake. The government notes that because the false statement occurred in the Complaint section and not the narrative "affidavit" section it evidences the officer's lack of an intent to mislead the magistrate. However, as stated, *supra*, the false statement was also a "sworn statement" and made under oath. Moreover, the false statement was a precursor to the

narrative affidavit. Practically speaking, the complaint to search is the formal request for the warrant. It precedes the narrative affidavit which is a supplement to the complaint. Therefore, because the false statement that surveillance indicated nighttime narcotics activity preceded the narrative affidavit and was likely one of the first significant details supporting probable cause, the impact of this false statement upon the magistrate cannot be lightly dismissed. It alone provided the sole nexus between the house and drug activity and it was completely and indisputably false.

The First Circuit has held that “[r]eckless disregard for the truth in the submission of a warrant application may be established where an officer "in fact entertained serious doubts as to the truth of the allegations" or where "circumstances evinced obvious reasons to doubt the veracity of the allegations" in the application. *Burke v. Town of Walpole,* 405 F.3d 66, 81 (1st Cir. 2005) quoting *United States v. Ranney,* 298 F.3d 74, 78 (1st Cir. 2002) See also, *United States vs. Yusuf,* 461 F.3d 374, 383 (3rd Cir. 2006) (assertions are made with reckless disregard for the truth when an officer has obvious reasons to doubt the truth of what he is asserting).

Innocent mistakes, however, do not warrant exclusion of evidence. See e.g. *United States v. Batchelor,* 2001 U.S. Dist. LEXIS 9929, *7-9 (USDC Kansas 2001) (only negligence or innocent mistake was evident where an officer believed a document was a receipt when in fact it was merely a written estimate, the court noted that the word "invoice" was printed on the top of the document, and it could easily be misidentified as a receipt for services rendered).

Detective Miguel’s allegations under oath before a judicial officer were so careless that they rose to a “reckless disregard for the truth.” When he signed his name directly above the false statement with the knowledge that there had never been any nighttime surveillance at the

house or of Mr. Sousa that indicated "illegal narcotics activity," it cannot be said that didn't have serious doubts as to the truth of those allegations.

An application for a search warrant must not become so commonplace and formulaic that care for the veracity of each statement is tossed aside. The officer had a duty to present the magistrate with accurate and truthful information. His failure to do so evidences a reckless disregard for the truth and demands further judicial scrutiny.

### III. Once The False Statement is Excised The Remaining Facts Do Not Support Probable Cause.

The government claims that the warrant application supports probable cause even when putting aside the false assertion that surveillance established that Mr. Sousa conducted narcotics activity at night and the other illegally gained evidence from the briefcase.

It is well settled that "[p]robable cause for a warrant based on an affidavit 'exists where information in the affidavit reveals 'a fair probability that contraband or evidence of a crime will be found in a particular place.' 'Probability is the touchstone of this inquiry.'" *United States v. Syphers,* 426 F.3d 461,465 (1st Cir 2005) (quoting *United States v. Baldyga,* 233 F.3d 674, 683 (1st Cir. 2000) in turn, quoting *United States v. Khounsavanh,* 113 F.3d 279, 283 (1st Cir. 1997)).

The four facts the government relies upon to support probable case are (1) Mr. Sousa was stopped less than two miles from his home; (2) the car he drove contained 114 lbs. of marijuana in brick form; (3) a confidential informant indicated that Mr. Sousa was a known narcotics dealer; and (4) Mr. Sousa denied owning property in Tiverton. Sousa will address each fact individually. A full analysis of probable cause is also contained in Part I, Section C of Claimant's *Memo in Support of the Motion to Suppress Evidence,* pp. 21-25.

A. Location of the Traffic Stop

The mere fact that Mr. Sousa was less than two miles from his home does not establish a nexus between Mr. Sousa's home and an additional quantity of narcotics or contraband. The affidavit did not provide any detail which could support the speculation that his home was used to store or process narcotics. There was no prior investigation of Mr. Sousa or his property when the officers procured the search warrant. The affidavit did not detail any facts to provide a nexus between the house and drug activity because it simply did not exist.

B. The Quantity of Marijuana

The quantity of marijuana found within the trunk of Mr. Sousa's car does not indicate that Mr. Sousa was a narcotics dealer looking to "break up" or "re-package" the marijuana. There is nothing from the amount of seized marijuana to indicate that Mr. Sousa was anything but a low level courier of narcotics. Anything more was merely speculation. The government argues that "[p]resumably, Sousa was not going to break up and re-package the marijuana in his car. He needed a safe and secure location such as his house, which was in the same direction in which he was headed when he stopped." See, *Memorandum in Support of Plaintiff's Objection,* p. 13. This presumption is wholly unfounded and was not included in the warrant application to the magistrate nor supported by any evidence at the time the warrant was sought.

C. The Confidential Informant

A finding of probable cause cannot be based on the confidential informant's assertion that Albert Sousa was a "known dealer or narcotics" because the affidavit fails to provide any basis for the informant's knowledge of this fact. The government's reliance on the confidential informant should fail. Although the affidavit asserts the reliability of the informant in regard to

*other* investigations, it is completely silent as to the informant's personal knowledge with regard to his claim about Mr. Sousa or this investigation.

Informants are not presumed to be credible. The First Circuit has held that when an affidavit relies on the statements of anonymous sources, it must provide some information upon which the magistrate judge may assess the credibility of the sources' information. *Rodriguez v. Beninato,* 469 F.3d 1, 11-12 (1st Cir. 2006) citing, *United States v. Barnard,* 299 F.3d 90, 93 (1st Cir. 2002). The First Circuit has provided factors for consideration when a probable cause determination includes informant information. This "non-exhaustive" list includes:

> "whether an affidavit supports the probable veracity or basis of knowledge of persons supplying hearsay information; whether informant statements are self-authenticating; whether a law enforcement affiant included a professional assessment of the probable significance of the facts related by the informant based on experience or expertise; and, whether some or all of the informant's factual statements were corroborated wherever reasonable and practicable. Id.

According to the affidavit, Detective Miguel learned from Fall River Police Officer Scott Paul that a reliable informant claimed that Mr. Sousa was a "known narcotics dealer." The information provided by the confidential informant was an untested bare assertion. The affidavit failed to provide a shred of detail to establish a basis for the informant's personal knowledge of this assertion. There was no information to corroborate that the informant even knew or had ever met Mr. Sousa. There was no controlled buy at Mr. Sousa's home. There was no assertion that the informant had ever been to property in Tiverton and thus no reliable nexus between the informant's claim and the home to be searched. Moreover, there was no detail in the affidavit establishing the point in time when the informant made this assertion to Officer Paul.

D. <u>False Statement Regarding Property Ownership</u>

Mr. Sousa's failure to admit he owned property in Tiverton also cannot evidence anything more than a desire to keep law enforcement officers out of his home. It does not

establish the necessary nexus between his house and the probability that narcotics would be found there.

In summary the above factors on which the government relies to support probable cause do not demonstrate a fair probability that contraband or evidence of a crime would be found at Mr. Sousa's home.

**IV. The Tint on the Windows Is Not Apparent From the Public Street**

The plaintiff asserts that the tint on the windows was visible to the officers from a public vantage point and therefore the officers' intrusion onto the curtilage does not affect the validity of the warrant. Claimant disagrees. Although the windows may be visible from the street, the tint on the windows is not at all readily apparent from a public vantage point. Only upon close inspection is it possible to perceive that there is a slight tint on some of the windows.[1] From the public street it is extremely difficult for the untrained eye to tell if the reflection one might see in the middle of a sunlit afternoon is anything but the glare of the sun upon a bare windowpane.[2] Moreover, in this case the officer testified in the parallel proceeding that he observed the tint while standing five to ten feet from the windows and from a position well within the curtilage.

There was no "independent source" for the tint on the windows because it is not visible from the public way. The information was illegally obtained and also misrepresented to the magistrate by the statement that "all the windows were either tinted or blacked out" thus implying some covert or suspicious activity. Mr. Sousa maintains that the illegal entry onto to the curtilage both prompted the decision to seek a warrant and provided officers with details they

---

[1] All of the windows are not tinted.

[2] During the daylight hours most home and office windows reflect the sun. The sun's glare makes it difficult to see through windows into a home or business unless the interior is lit more brightly than the exterior.

inserted into the warrant application that contributed to the probable cause finding. *United States v. Dessesaure,* 429 F.3d 359 (1st Cir. 2005).

**V. The Good Faith Exception is Not Appropriate Based on the Facts of This Case**

In *United States v. Leon*, 468 U.S. 897, 922 (1984), the Supreme Court adopted an good faith exception to the usual rule that evidence seized in violation of the Fourth Amendment must be excluded from trial. The Court recognized that the purpose of this exclusionary rule is to deter police misconduct; therefore, it declined to apply the rule in circumstances where an officer acts in good faith. The First Circuit noted that "[w]hile Leon restricted the application of the exclusionary rule, it [did] not eliminate it. Exclusion remains the appropriate remedy in several circumstances, including (1) where the magistrate is misled by information in an affidavit that the affiant knew was false or would have known was false except for a reckless disregard for the truth." *United States v. Capozzi,* 347 F.3d 327, 332 (1st Cir. 2003) (internal citations omitted). There can be no finding of good faith based on:

- Detective Miguel's reckless false statement regarding surveillance indicated narcotics activity
- Detective Miguel's implication that the sketch of the boat found within the briefcase was connected to the boat on Mr. Sousa's property. The affiant explained that he had "training and experience dealing with narcotics hides and has observed narcotics hides located inside boats." This bare assertion was reckless and not made in good faith when there was no information connecting the sketch to the boat on the property.
- Detective Miguel chose not to inform Judge LaFazia that Sousa's neighbors had been interviewed, and had never observed any unusual or suspicious activity,

vehicular or pedestrian traffic. This omission, while perhaps not material under *Franks*, was made in bad faith.

- Evidence from neighbors that the officers began their full-scale search prior to the Magistrate's authorizing the warrant at 8:35 PM.
- The police initiated contact with Mr. Sousa and obtained statements from him after he invoked his right to counsel and after his attorney, Brian Corey, departed the police station.
- The affidavit contained false information implying that stolen or embezzled property might be located at Mr. Sousa's property.
- The overly broad seizure of checking accounts that had no nexus to drug activity.

**Conclusion**

Claimant avers that, based on the facts of this case as argued here, and in Claimant's previously filed memorandum in support of the motion to suppress, and as will unfold during the evidentiary hearing, the warrant must be voided and the fruits of the search excluded.

Respectfully submitted,
**ALBERT SOUSA**
By his Attorney,

/s/ C. Leonard O'Brien
C. LEONARD O'BRIEN (#1886)
MacFadyen, Gescheidt & O'Brien
101 Dyer Street
Providence, RI 02903
(401) 751-5090
(401) 709-5017

**CERTIFICATE OF SERVICE**

I hereby certify that on January 4, 2007, I electronically filed the **Claimant's Response to the Plaintiff's Objection to the Claimant's Motion to Suppress** with the Clerk of the United States District Court for the District of Rhode Island using the CM/ECF System.

The following participant received notice electronically:

Michael P. Iannotti
Assistant U.S. Attorney
U.S. Attorney's Office
Fleet Center
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Michael.iannotti@usdoj.gov

/s/ C. Leonard O'Brien
C. LEONARD O'BRIEN (#1886)
MacFadyen, Gescheidt & O'Brien